## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SAMANTHA COVER-KILLEWALD, FREDERICK WATTS, TERRY BLACKMON,DOROTHY BLACKMON, ZARIE PHILLIPS, individually and on behalf of similarly situated individuals; LISA THOMAS; and B. JEAN WATTS, individually, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:14-cv-12102-LJM-RSW |
| BROOKSIDE OF SUPERIOR TOWNSHIP CONDOMINIUM ASSOCIATION; COUNTRY POND ESTATES CONDOMINIUM ASSOCIATION; EQUITYEXPERTS.ORG, LLC, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## PAUL GAMBOA'S RESPONSE TO THE APRIL 20, 2016 SHOW CAUSE ORDER

Paul Gamboa of Gordon & Rees LLP, counsel for Defendants EquityExperts.org, LLC ("Equity Experts"), Brookside of Superior Township Condominium Association ("Brookside"), and Country Pond Estates Condominium Association ("Country Pond") hereby respectfully submits the following response to this Honorable Court's April 20, 2016 Order requiring defense counsel to show cause as to why he should not be held in contempt of Court for failing to appear in-person at the April 19, 2016 status conference.

1

## <u>STATEMENT OF THE ISSUE PRESENTED</u>

1.     Has Defendants' counsel, Paul Gamboa, demonstrated cause as to why he should not be sanctioned for failing to comply with this Honorable Court's March 1, 2016 and March 31, 2016 Orders?

> **<u>Answer:</u>**    In light of my good faith belief that all parties and all counsel had complied with the letter and spirit of the March 1, 2016 and March 31, 2016 Orders, as well as the fact that my in-person appearance at the April 19, 2016 status conference would have been impossible given the time that I received the notice to appear, I respectfully aver that I have shown good cause as to why I should not be sanctioned.  In addition, my many efforts to get this matter dismissed with prejudice pursuant to settlement evidences that I no way unreasonably or vexatiously multiplied the proceedings in this case.

## <u>CONTROLLING AUTHORITY</u>

I respectfully state that the controlling or most appropriate authorities for the determination of the Court's April 20, 2016 show cause order are:

- 18 U.S.C. § 401(3), which empowers a federal court to impose civil or criminal sanctions on an attorney who fails to comply with a lawful, specific court order.

- *Downey v. Clauder*, 30 F.3d 681, 685-87 (6th Cir. 1994), which discusses the distinction between civil and criminal contempt, and also discusses the standard for the imposition of criminal contempt sanctions, namely, that a party must willfully violate a specific, clear, and unequivocal court order.

- 28 U.S.C. § 1927, which provides that any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

## **INTRODUCTION**

For the last thirteen (13) months, I have represented Equity Experts in the United States District Court for the Eastern District of Michigan in four (4) separate class action lawsuits that varied in degrees of vintage and complexity. Throughout my representation of that company, its employees, and the various homeowner associations on whose behalf it operated, I have strived to conduct myself with professionalism and fairness.

During this relatively short period, I was able to promptly resolve the two (2) suits that I was personally involved in from their respective dates of filing. With respect to the other actions, *Cover-Killewald, et al. v. Equity Experts*, *et al.* and *Watts v. Equity Experts*, I substituted in as counsel for Defendants, and was able to eventually assist in their resolution as well. The *Cover-Killewald* and *Watts* class claims were far from straightforward; rather, they involved seven (7) named Plaintiffs and three (3) Defendants, and eventually spiraled off into another lawsuit filed by certain Plaintiffs against Equity Experts' insurer.

The finalization of the settlements reached in these suits also proved to be far from a straightforward affair. Although an agreement as to the settlement's monetary component was reached on February 15, 2016, there were ongoing discussions as to the amounts to be contributed by Defendant versus its insurer, whether the settlement was to paid in a lump sum versus an installment plan, and

4

whether funds would be simply wired to opposing counsel's trust account and disbursed, or if my firm's trust account could be wired the monies so that we could eventually issue separate checks to Plaintiffs and their attorney.

Additionally, the settlement had "administrative" components, with agreement not being formally reached on those terms until March 18, 2016. After exchanging drafts of an exemplar release and settlement agreement, the final form of the template to be employed was not agreed upon until early April. Releases and settlement agreements that were signed by the seven (7) Plaintiffs were not provided until the week of April 11, 2016. This also marked the first time that I was provided with specific instructions as to the amounts each Plaintiff was to be paid, and that had to be reworked due to their counsel's mathematical error. Finally, while certain aspects of the "administrative actions" to be undertaken by my clients have proven straightforward enough, Plaintiffs have made an extra-contractual demand that one such action needs to be confirmed by a non-party to this litigation. As of this response's filing, I am *still* working on obtaining that additional assurance for Plaintiffs so that the remaining three (3) claims can be dismissed with prejudice and without further intervention of this Court.

This Honorable Court was first apprised of the settlement in principle on March 1, 2016, and an order was setting an April 1, 2016 deadline for the filing of a stipulation of dismissal pursuant to that settlement. Failure to finalize the

settlement within that month's time would have required attorneys Curtis Warner, Paul Gamboa, and Charity Olson to appear for an April 19, 2016 status conference. Due to the complicating factors mentioned briefly above, that deadline to file a stipulation of dismissal was extended to April 18, 2016, and the portion of the Order regarding the status hearing was modified to read that "[i]f the parties have not dismissed this case by April 18, 2016, the parties will appear for a status conference on April 19, 2016."

After exchanging fully executed settlement agreements on April 18, 2016, and after providing opposing counsel with proof that payment would be delivered on the morning of April 19, 2016, I received permission to file a stipulation of dismissal of these claims. Due to the fact that the checks had not cleared and administrative actions had yet to be completed, and so that there could be no question that this Court retained jurisdiction to summarily enforce the terms of the settlement agreement, the parties agreed to dismiss Plaintiffs' individual claims without prejudice and without further costs, with leave to reinstate on or before May 9, 2016.

That stipulation of dismissal was filed in accordance with the Court's Order on April 18, 2016. As I believed in good faith that I had complied with said Order, I made no plans to travel to Detroit, Michigan for an in-person status conference.

By the time I was notified that the stipulation of dismissal had been deemed insufficient, it would have been physically impossible for me to travel from Chicago, Illinois to Detroit, Michigan in time for its 2:00 p.m. ET commencement. After being declined the opportunity to participate telephonically, I ensured that Defendants did in fact appear for the hearing, and local counsel was present.

It is therefore my respectful contention that I complied with the March 1 and March 31, 2016 Orders, and that I had a good faith belief that my personal appearance would never be needed for the April 19, 2016 status conference. Additionally, I respectfully aver that I complied with the March 31, 2016 Order's mandate that the parties appear at said hearing, as I ensured that local counsel was present on Defendants' behalf. Therefore, I pray that this Honorable Court deem that I have shown good cause as to why I should not sanctioned for failing to comply with either Order.

## STATEMENT OF FACTS

**I.   My involvement in class action lawsuits involving Equity Experts – *Ernst, Cover-Killewald, Watts,* and *Donnelly.***

On or around March 6, 2015, I was first retained to represent Defendants in a putative class action lawsuit filed by Plaintiffs Dale Ernst, Anita Ernst, and Dale Ernst, II in the U.S. District Court for the Eastern District of Michigan, Northern Division.  That suit, styled *Dale Ernst, Anita Ernst, and Dale Ernst, II, individually and on behalf of others similarly situated v. EquityExperts.Org, LLC,*

*Michael Novak, and Greenview Condominium Association,* (1:15-cv-10062), was initially assigned to District Judge Thomas L. Ludington and Magistrate Judge Patricia T. Morris.

In the process of investigating the *Ernst* matter, I learned of two other class actions pending against Equity Experts in the U.S. District Court for the Eastern District of Michigan, Southern Division – *Samantha Cover-Killewald, et al. v. EquityExperts.Org, LLC, Brookside of Superior Township Condominium Association, and Country Pond Estates Condominium Association* and *Frederick Watts v. EquityExperts.Org, LLC*. [1]  Plaintiffs in the *Cover-Killewald* and *Watts* suits were represented by Curtis C. Warner while the Defendants were, at that point in time, represented by Paul T. O'Neill and Zlatina Georgieva of Bowman and Brooke LLP.  *See* Dkt. 6 and 57 (*Cover-Killewald*); Dkt. 8 and 18 (*Watts*).

I respectfully submit that the *Cover-Killewald* and *Watts* suits could be fairly characterized as highly contentious.  As of April 13, 2015, the date that I was formally retained to represent Defendants in those suits, there were eighty (80) docket entries in *Cover-Killewald* and thirty-two (32) dockets entries in *Watts*.

---

[1] For ease of reference, these lawsuits will be referred to as the "*Cover-Killewald*" and "*Watts*" suits, respectively.

Plaintiffs had filed multiple motions to compel discovery responses[2] and motions to strike portions of Defendants' responsive pleadings.[3]  Defendants filed a brief in opposition to a motion to consolidate the cases,[4] while Plaintiffs opposed a motion seeking entry of a protective order.[5]  Even Mr. O'Neill's attempts to withdraw as counsel for Defendants were contested.[6]

On April 17, 2015, I was granted leave to formally appear on behalf of Defendants in the *Cover-Killewald* and *Watts* suits.  Dkt. 81 (*Cover-Killewald*); Dkt. 33 (*Watts*).  At that time, a settlement conference was already scheduled to proceed before Magistrate Judge R. Steven Whalen.  Dkt. 78 (*Cover-Killewald*); Dkt. 30; 32 (*Watts*). As such, I promptly sought to have the *Ernst* matter reassigned before this Honorable Court,[7] so that *all* interested parties could participate in a settlement conference.  This was particularly important because, in addition to sharing nearly identical substantive allegations and overlapping classes of putative plaintiffs, these lawsuits were all subject to Equity Experts' single "eroding" insurance policy, which was being rapidly diminished by defense fees and costs. As a practical matter, I was very concerned that the continued erosion and potential exhaustion of the policy would leave all parties involved in an impossible position.

---

[2] Dkt. 25; 48 (*Cover-Killewald*); Dkt. 28 (*Watts*).
[3] Dkt. 49; 50 (*Cover-Killewald*); Dkt. 11 (*Watts*).
[4] Dkt. 20 (*Watts*).
[5] Dkt. 69 (*Cover-Killewald*).
[6] Dkt. 74 (*Cover-Killewald*); Dkt. 27 (*Watts*).
[7] Dkt. 18 (*Ernst*).

On April 30, 2015, the *Ernst* class action was referred to Judge Whalen for the May 5, 2015 settlement conference. Dkt. 21 (*Ernst*).

Around this time, Equity Experts was named as a Defendant in another putative class action lawsuit in the U.S. District Court for the Eastern District of Michigan, Southern Division. This suit, styled *Thomas Donnelly, on behalf of himself and others similarly situated, v. EquityExperts.Org, LLC,* (2:15-cv-11120), was initially assigned to District Judge Victoria A. Roberts and Magistrate Judge Anthony P. Patti. On April 20, 2015, I was retained by Equity Experts to defend it against Mr. Donnelly's claims, and I formally filed my appearance in that matter two (2) days later.

On May 5, 2015, Judge Whalen held a settlement conference for the *Cover-Killewald*, *Watts*, and *Ernst* matters. During that conference, Plaintiff's counsel for the *Donnelly* suit also participated telephonically. While the parties were not able to resolve these cases at the settlement conference, progress was made, and I subsequently effected the reassignment of the *Donnelly* matter to this Honorable Court[8] in the interests of economy and so that all interested parties could participate in the continued settlement conference before Judge Whalen. That continued settlement conference was eventually set for September 29, 2015. Dkt. 86 (*Cover-Killewald*); Dkt. 36 (*Watts*); Dkt. 26 (*Ernst*); Dkt. 14 (*Donnelly*).

_____

[8] Dkt. 8 (*Donnelly*).

Prior to the continued settlement conference, I was able to successfully negotiate the settlement of the *Ernst* and *Donnelly* actions, and I filed notices of settlement for those actions on September 22, 2015.  Dkt. 29 (*Ernst*); Dkt. 16 (*Donnelly*).  A stipulation of dismissal was filed in the *Donnelly* action on October 26, 2015, and this Honorable Court entered the order formally dismissing it with prejudice on November 5, 2015.  Dkt. 18-19 (*Donnelly*).  Because it took some time to obtain the executed release and settlement agreements in the *Ernst* action, that stipulation of dismissal was not filed until March 30, 2016.  Dkt. 31 (*Ernst*).  This Honorable Court entered the order formally dismissing it with prejudice on April 4, 2016.  Dkt. 32 (*Ernst*).

On September 29, 2015, I participated in the settlement conference before Judge Whalen, and unfortunately, the parties were unable to amicably resolve the *Cover-Killewald* and *Ernst* suits.  As a result, this Honorable Court lifted the stay and set the matters for a status conference.  Dkt. 88 (*Cover-Killewald*); Dkt. 38 (*Watts*).  In the wake of that November 4, 2015 status hearing, I stipulated to the consolidation of the *Cover-Killewald* and *Watts* suits,[9] and on December 1, 2015, an amended scheduling order was entered for that consolidated action.  Dkt. 95; 97 (*Cover-Killewald*).

---

[9] Dkt. 89-90 (*Cover-Killewald*); Dkt. 39-41 (*Watts*).

11

Despite the lifting of the stay and the fact that the parties were again actively litigating these suits, attempts at resolving the cases amicably still continued. While Defendants wish to keep said settlement negotiations confidential, such efforts included the tendering of all remaining monies left available under the applicable insurance policy along with my agreement to write off my own bills to ensure that a successful resolution could be reached.

On November 13, 2015, Charity A. Olson filed an appearance on behalf of Equity Experts.   Dkt. 95; 97 (*Cover-Killewald*).   Ms. Olson also engaged in settlement negotiations with Plaintiffs' counsel for the next several months, and was instrumental in these matters finally getting resolved.

## II.    A complicating factor – *Lisa Thomas and B. Jean Watts v. Hiscox, Inc.*

On January 22, 2016, Mr. Warner filed a Complaint for Declaratory Action against Hiscox, Inc. in the U.S. District Court for the Eastern District of Michigan, Southern Division.   That suit, styled *Lisa Thomas and B. Jean Watts v. Hiscox, Inc.*, (2:16-cv-10217), was brought on behalf of Plaintiffs to the *Cover-Killewald* lawsuit that had asserted individual claims that were separate and distinct to the claims asserted by the putative class. Dkt. 1, ¶ 1 (*Thomas*).   Essentially, Plaintiffs sought a judicial determination as to whether the insurance policy limit for individual claims should apply, or instead, whether the policy's sublimit for class claims properly applies.   Dkt. 1, ¶¶ 11-15 (*Thomas*).

As noted in the Complaint for Declaratory Action, Mr. Warner requested Equity Experts to join this matter as a Plaintiff,[10] which had the potential for creating a conflict of interest between me (retained counsel), my client and the Hiscox-insured, Equity Experts, and its insurer.  That case technically remains pending before Your Honor.

### III.    The resolution of the *Cover-Killewald* and *Watts* suits

On Thursday, February 11, 2016, Mr. Warner and Ms. Olson had another conversation regarding the potential resolution of the *Cover-Killewald* and *Watts* suits.  On that date, Plaintiffs made a demand for certain monetary relief as well as certain "administrative relief."[11]   I was not privy to these negotiations; rather, Plaintiffs' settlement demands were forwarded to me via an e-mail.

Over the next few days, those settlement demands were discussed with Defendants, defense counsel, and Equity Experts' insurer.   On President's Day, Monday, February 15, 2016, I was instructed to communicate to Mr. Warner that Equity Experts agreed to the negotiated demand for monetary relief.  I did as I was instructed, relaying to Mr. Warner that its insurer's contribution to the agreed-upon monetary relief was not yet determined, and further relaying that Equity Experts

---

[10] Dkt. 1, ¶ 5 (*Thomas*).

[11]  As this "administrative relief" was eventually made a part of the confidential settlement agreement, I will refer to them simply as "administrative action 1" and "administrative action 2."   As I hope will become clear, the use of the term "administrative" is not meant to downplay their import, and is not meant to trivialize the difficulty in confirming their completion.

would like to discuss the potential for an installment payment plan. While counsel was not particularly disposed to agree to a payment plan and expressed his clear preference for payment to be effected in a lump sum, Mr. Warner did discuss its potential necessity with me. Additionally, during that same conversation, I relayed to Mr. Warner that I had not been provided with the authority to agree to the demanded administrative relief. With the settlement of the *Cover-Killewald* and *Watts* actions confirmed in part, certain Defendant depositions were taken off calendar. Mr. Warner sent a template release and settlement agreement, using Samantha Cover-Killewald as an exemplar, to my attention one week later.

By February 29, 2016, I was still working on resolving certain issues attendant to Plaintiffs' settlement demand. On that date, Mr. Warner and I collaborated on a joint motion to request the entry of an Order suspending the deadlines set forth in the operative Scheduling Order, to allow the parties the time needed to finalize their settlement in principle. That joint motion was filed by Plaintiff's counsel the next day, on March 1, 2016. Dkt. 102 (*Cover-Killewald*). The Court entered a corresponding Order on that date, indicating that, "i[f] the parties have not dismissed this case by April 1, 2016, an in person status conference with Mr. Warner, Mr. Gamboa and Ms. Olsen shall be held on April 19, 2016 at 2:00 p.m." Dkt. 102 (*Cover-Killewald*).

By March 18, 2016, I was able to confirm to Mr. Warner that a lump payment could be made to satisfy the demanded monetary relief, obviating the complications that might have otherwise been caused by an installment plan. Further, I confirmed that Defendants agreed to satisfy administrative action 1 and administrative action 2. I forwarded Mr. Warner a revised release, which, among other changes, contemplated the wiring of these funds to his trust account.

Mr. Warner returned the release and settlement agreement with his changes later that afternoon, indicating that he would be speaking with the Blackmon's as to whether their claims for additional monetary relief would be abandoned. On March 28, 2015, I provided Mr. Warner with a revised release that was approved by my clients as well Equity Experts' insurer. On that date, Mr. Warner and I discussed the potential for payment wired to my law firm, with separate checks being made to each of the Plaintiffs as well as to Mr. Warner, from our firm's trust account. This method was not preferred by me, due to the potential for unforeseen issues arising.

In the correspondence that I sent to Mr. Warner attaching the amended release and settlement agreement, I suggested that we should specify the timing of administrative action 1 and administrative action 2's completion, and requested his input in that regard. I also offered to make myself available at his convenience to apprise the Court of the complicating issues that slowed finalization of settlement,

and to request that the April 19, 2016 status conference be entered and continued for late April or early May.

On March 29, 2016, Mr. Warner emailed me a proposed amended release and settlement agreement. We spoke the following day, and agreed to contact the Court's case manager in order to request entry of an order entering and continuing the deadline for the filing of a stipulation of dismissal. After speaking the Court's clerk regarding the parties' continued efforts, I filed a joint motion to that effect. Dkt. 104 (*Cover-Killewald*). That same day, Mr. Warner sent me a proposed finalized release and settlement agreement template that I forwarded on to my clients. In forwarding on the proposed finalized settlement agreement, I also requested that the funds comprising the monetary relief be wired to my firm's trust account, so as to minimize any potential delays.

On March 31, 2016, this Honorable Court entered an Order entering and continuing the April 1, 2016 deadline for the filing of a stipulation of dismissal to April 18, 2016. Dkt. 105 (*Cover-Killewald*). The Order specified that: "[i]f the parties have not dismissed this case by April 18, 2016, the parties will appear for a status conference on April 19, 2016 at 2:00 p.m. before District Judge Laurie J. Michelson." *Id.* (Emphasis added).

On April 6, 2016, I received confirmation that the proposed form of the finalized release and settlement agreement was acceptable to my clients. On that same date, I relayed that confirmation on to Mr. Warner.

On Monday, April 11, 2016, Mr. Warner forwarded complete copies of the release and settlement agreements that were signed by Samantha Cover-Killewald, Zarie Phillips, Lisa Thomas, Frederick Watts, and B. Jean Watts. Because a template of the release and settlement agreement using Ms. Cover-Killewald as an exemplar was the only form that was previously exchanged, this was the first documentation directing Defendants as to the precise amounts that Mr. Philipps, Ms. Thomas, and Mr. and Mrs. Watts would be getting paid as part of the settlement agreement.

The next day, Tuesday, April 12, 2016, Mr. Warner forwarded a picture of the signature page to the release and settlement agreement that was executed by Thomas Blackmon and Dorothy Blackmon. Because I was not provided with the entire document, I was left unsure as to the amounts of monies that were to be paid to Mr. and Mrs. Blackmon. I wrote to Mr. Warner on Wednesday, April 13, 2016, requesting a complete copy of the Blackmons' release and settlement agreement. In the interim, I forwarded all of the release and settlement agreements received up to that point on to my clients.

After Mr. Warner provided me with a complete copy of the Blackmons' release and settlement agreement, I discovered that the payments to be made to each of the individual Plaintiffs actually exceeded the total monetary relief to be paid pursuant to settlement agreement.   Mr. Warner and I resolved his mathematical error on Wednesday, April 13, 2016.

On Thursday, April 14, 2016, with the hopes of avoiding any issues that would further complicate or delay the Plaintiffs or opposing counsel's ability to cash their respective checks, I wrote counsel a series of questions as to the exact manner in which they were to be issued.   Additionally, I requested that Mr. Warner provide me with a Form W-9 for his firm.   He provided answers to those queries, as well as an executed Form W-9, that same day.

In working with my firm's accounting department to issue settlement checks in the manner requested by Plaintiffs' counsel, I learned that each of the payees would also have to complete and return Form W-9's.   In writing Mr. Warner on Friday, April 15, 2016 to request said documentation, I confirmed that, provided the forms were promptly returned to my attention, I could still have payment issued on Monday, April 18, 2016 for overnight delivery.   I suggested that, upon providing counsel with the tracking numbers demonstrating overnight delivery of the checks, we jointly move the Court to have a telephonic hearing so to explain the issues delaying the finalization of settlement.   I further stressed that this

particular situation was precisely the sort of issue that I was trying to avoid when requesting that all monetary relief simply be wired to Mr. Warner's trust account, so that he could distribute payments to his clients.

Mr. Warner sent me completed Form W-9's for all of his clients on the afternoon of April 15, 2016, and I forwarded them on to my firm's accounting department so that payment could be issued.  In the interim, I was apprised that Equity Experts' president, who had been out of town, would be executing the release and settlement agreements that day or, at latest, by April 18, 2016.

On the afternoon of Monday, April 18, 2016, I was provided with fully-executed copies of the release and settlement agreements.  Those were sent to opposing counsel along with tracking numbers that evidenced that the settlement checks were being sent "first overnight" with expected delivery by April 19, 2016 at 8:00 a.m.  I informed Mr. Warner that documentation proving that administrative action 1 and administrative action 2 were complete would be sent on April 19, 2016 as well.  At this time, I once again proposed jointly moving the Court to have a telephonic status conference in the event that a stipulation of dismissal could not be entered.   Absent concurrence in such a request, I indicated that I would be unilaterally filing a motion for a telephonic status conference.

I spoke with Mr. Warner that afternoon, and based upon the representations that the settlement checks were issued from our trust account as well as the representations that the administrative relief was forthcoming, the parties agreed to dismiss Plaintiffs' individual claims without prejudice and without further costs, with leave to reinstate on or before May 9, 2016.  The proposed stipulation and order were drafted in such a fashion (at least in my mind), so that there could be no dispute that this Court retained jurisdiction to summarily enforce the terms of the settlement agreement in the event that, for example, the checks did not clear or Defendants filed to complete administrative action 1 or administrative action 2. As the stipulation of dismissal was filed in accordance with the deadline set forth by the Court's March 31, 2016 Order,[12] I did not believe that there would be any need to appear for a status conference the following day.

On the evening of April 18 and again on the morning of April 19, 2016, Mr. Warner contacted me regarding an issue he noted with the proposed order of dismissal; specifically, it failed to specify that claims of the putative class members would be dismissed without prejudice.  Counsel submitted an amended proposed order to this effect on April 19, 2016.  At approximately 7:35 a.m. CT, I wrote to the Court's case manager, confirming that Mr. Warner's proposed order more accurately reflected the terms of our settlement agreement.

---

[12] Dkt. 105 (*Cover-Killewald*).

20

On April 19, 2016, I took a train that departed at 8:16 a.m. CT, and was set to arrive at Chicago's Union Station at 8:40 a.m. CT.   While on that train, I received an email from the Court's case manager indicating that the proposed dismissal order was unacceptable, and further indicating that my in-person appearance would be required for the status conference scheduled to commence at 2:00 p.m. ET.  At the time I disembarked the train at 9:40 a.m. ET, even had I a car, it would have been impossible to be physically present at the Theodore Levin U.S. Courthouse by 2:00 p.m. ET, as the trip is roughly 283 miles and takes approximately 4.5 hours to complete.

As such, I went to my office, where I began working on confirming that counsel had received the settlement monies, and began working on providing counsel with proof that administrative actions 1 and 2 had been completed. During the course of these communications, wherein I again requested that the parties jointly contact the Court telephonically to explain that settlement had all but been completed, I learned that Mr. Warner was already travelling to Detroit.

I then contacted the Court's case manager in an effort to explain that I could not possibly be in Detroit by 2:00 p.m. ET, and to request leave to participate in the status conference via telephone.  When that request was rejected, I contacted our local counsel, Joseph A. Starr, to ensure that Defendants would be represented at the hearing and to further ensure that the Court could be apprised that the parties

were nearing completion of the various terms and conditions of their settlement agreement.

I provided opposing counsel with proof that administrative action 1 and administrative action 2 were completed by the afternoon of April 19, 2016. Counsel wrote to inform me that there were additional components of administrative action 1 that still needed to be completed, and that was cared for by April 21, 2016.

Additionally, while Defendants are universally of the opinion that administrative action 2 has already been satisfied in accordance with the plain terms of the release and settlement agreements, opposing counsel has requested extra-contractual, additional written assurances in that regard. With respect to the Country Pond Plaintiffs, those additional written assurances were provided on April 22, 2016. Accordingly, Lisa Thomas, Frederick Watts, and B. Jean Watts filed stipulations to dismiss their claims with prejudice on that date.

At present, counsel is still trying to obtain additional written assurances of completion of administrative action 2 for the Plaintiffs who reside at Brookside (Samantha Cover-Killewald, Thomas Blackmon and Dorothy Blackmon). Because Brookside is managed by a company who is not a party to these actions, obtaining this documentation has proven to be more difficult. Those are the only Plaintiffs who have yet to stipulate to the dismissal of their claims with prejudice.

## COUNSEL'S RESPONSE TO SHOW CAUSE ORDER

As I very much hope the above recitation demonstrates, the settlement of the *Cover-Killewald* and *Watts* suits involved much more than a simple exchange of a releases and settlement agreements and checks.  Rather, there were many issues that were resolved over the course of the last sixty days, and I made every effort to ensure compliance with this Court's March 1, 2016 and March 31, 2016 Orders.

The April 20, 2016 Order requiring me to show cause as to why I should not be sanctioned was silent as to whether the imposition of that sanction is being contemplated under 18 U.S.C. § 401 or pursuant to 28 U.S.C. § 1927.  Dkt. 109 (*Cover-Killewald*).  The former statute empowers a federal court with the authority to impose civil or criminal sanctions on an attorney who fails to comply with a lawful, specific court order.  *Downey v. Clauder*, 30 F.3d 681, 685 (6th Cir. 1994), citing 18 U.S.C. § 401(3).  Civil contempt sanctions are designed to enforce compliance with court orders and to compensate injured parties for losses sustained.  *Id.*  Criminal contempt sanctions, on the other hand, are imposed to vindicate the authority of the court by punishing past acts of disobedience. *Id.* Accordingly, a fine that is payable to a complainant as compensation for damages caused by a contemnor's noncompliance is civil in nature, while an unconditionally payable fine is criminal.  *Id.*

Because the April 20, 2016 Order does not indicate whether a fine is to be paid to any party, it appears the sanction contemplated may be criminal in nature. To warrant the imposition of criminal contempt sanctions, a party must willfully violate a specific, clear, and unequivocal court order. *Downey*, 30 F.3d at 687. Here, the March 1, 2016 and March 31, 2016 Orders do not specify the manner in which the stipulation of dismissal was to be drafted, and the language specifically requiring my personal appearance was absent in the March 31, 2016 Order.

In addition to the lack of specificity, in filing the stipulation of dismissal and in subsequently failing to personally appear on April 19, 2016, I certainly do not believe that I acted "with a willfulness that implies a deliberate or intended violation, as distinguished from an accidental, inadvertent or negligent violation." *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1272 (6th Cir. 1983). Instead, I attempted to comply with the Court's Orders by filing a stipulation of dismissal by the Court-imposed deadline, attempted to participate telephonically in the next day's hearing, and arranged for the appearance of local counsel. Under those circumstances, I respectfully maintain that my actions do not merit sanctions.

Alternatively, Section 1927 provides that any attorney who unreasonably and vexatiously multiplies the proceedings in a case may be required by the Court to personally satisfy the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. 28 U.S.C. § 1927. "Simple inadvertence or

negligence that frustrates the trial judge will not support a sanction under §1927." *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir. 2001) (citations omitted). "There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id.*

Considering the fact that I twice attempted to convince Mr. Warner to jointly move the Court for leave to appear telephonically in order explain the issues that we were working through, and considering the work performed after the April 11 and April 13, 2016 receipt of executed settlement agreements, I do not believe that I unreasonably and vexatiously multiplied any proceeding.  I instead believe that I complied with both the letter and the spirit of the March 1 and March 31, 2016 Orders, and have showed cause as to why I should not be sanctioned here.

## CONCLUSION

For the foregoing reasons, I respectfully pray for the entry of an Order holding that I have shown cause as why I should not be sanctioned.  I welcome the opportunity to present this Honorable Court with any supporting documentation for an *in camera* review, and can personally appear to further explain these issues.

Dated: April 25, 2016                    Respectfully submitted,

                                        */s/* Paul Gamboa
                                        _____

                                        Paul Gamboa

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, states that on April 25, 2015, a true and complete copy of the forgoing was served upon all counsel of record via the United States District Court for the Eastern District of Michigan's CM/ECF system.

Respectfully submitted,


By:  /s/ Paul Gamboa


Paul Gamboa
GORDON & REES LLP
One North Franklin, Suite 800
Chicago, Illinois 60606
Tel:  (312) 565-1400
Fax:  (312) 565-6511